UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

In re:

JOSHUA SIMON MARGULIES,

                                         Debtor.

------------------------------------------------------- :

JOSHUA SIMON MARGULIES,

                                         Appellant,

                    v.

DENNIS HOUGH and USAA CASUALTY
INSURANCE COMPANY,

                                         Appellees.

------------------------------------------------------- :

DENNIS HOUGH,

                               Cross-Appellant,

                    v.

JOSHUA SIMON MARGULIES and USAA
CASUALTY INSURANCE COMPANY,

                               Cross-Appellees.

------------------------------------------------------- X

13 Civ. 6009 (KPF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 9, 2014

KATHERINE POLK FAILLA, District Judge:

      On August 3, 2000, Joshua Margulies and Dennis Hough engaged in what has fairly been described as a slow-moving game of chicken on a Manhattan street. Margulies drove forward in his car at a slow rate of speed toward Hough, a pedestrian, expecting him to get out of the way. Instead, Hough stood his ground. When traffic prevented Margulies from veering around Hough, Margulies hit Hough with his car. In 2003, Hough obtained a

$4.8 million default judgment after filing a lawsuit accusing Margulies of negligence.  Despite more than a decade of legal proceedings between and among Hough, Margulies, and Margulies's insurer at the time, USAA Casualty Company ("USAA"), Hough has yet to collect on that judgment.

The instant action arises from an adversary proceeding filed by Hough in Margulies's Chapter 7 bankruptcy proceedings; the proceeding was initiated to prevent Margulies from discharging his debt to Hough, and alternatively to force USAA to indemnify Margulies for the judgment.  After trial, the United States Bankruptcy Court for the Southern District of New York (Bernstein, *J.*) determined that Margulies's debt was not dischargeable pursuant to 11 U.S.C. § 523(a)(6), because it arose from his willful and malicious conduct; Margulies appeals from this determination.  Hough cross-appeals from the Bankruptcy Court's determination that USAA was not liable for the judgment pursuant to New York Insurance Law § 3420, since Margulies intentionally hit Hough.  For the reasons set forth below, the judgment of the Bankruptcy Court is vacated, and the matter is remanded for further proceedings consistent with this Opinion.

## BACKGROUND[1]

The complex and lengthy history of the instant litigation is set forth in

---

[1] The facts set forth herein are taken from the record on appeal as designated by each appellant.  In addition, included within the record is the transcript from the December 14, 2012 trial before the Bankruptcy Court, which is cited as "Tr."

For convenience, the parties' memoranda of law will be referenced as follows: Margulies's appellate brief as "Margulies Br."; Hough's appellate brief as "Hough Br."; USAA's opposition brief as "USAA Opp."; and Hough's and Margulies's reply briefs as "Hough Reply" and "Margulies Reply."

the Bankruptcy Court's previous decisions in *Hough* v. *Margulies (In re Margulies)*, 476 B.R. 393 (Bankr. S.D.N.Y. 2012) ("*Margulies I*"), *Hough* v. *Margulies (In re Margulies)*, Adv. No. 10-04050, 2012 WL 3782535 (Bankr. S.D.N.Y. Aug. 31, 2012) ("*Margulies II*"), and *Hough* v. *Margulies (In re Margulies)*, Adv. No. 10-04050, 2013 WL 2149610 (Bankr. S.D.N.Y. May 16, 2013) ("*Margulies III*"), and the filings contained in the dockets for *In re Margulies*, No. 10-14012 (SMB) (Bankr. S.D.N.Y.), and *Hough* v. *Margulies*, Adv. No. 10-04050 (SMB) (Bankr. S.D.N.Y.).  For convenience, the factual and procedural information relevant to the instant appeal is set forth below.

## A.    The August 2000 Incident

The Bankruptcy Court made the following factual findings after a trial at which Hough, Margulies, and Kristopher Zdyb, who was a passenger in Margulies's car, each testified.  *Margulies III*, 2013 WL 2149610, at *1.  At approximately 10:30 a.m. on August 3, 2000, Margulies was driving north on Sixth Avenue in Manhattan with Zdyb, in order to attend an important business meeting with former Governor Mario Cuomo.  *Id.*  They were already late.  Hough, meanwhile, was working as a flagman directing traffic on Sixth Avenue.  *Id.*  Sixth Avenue, or Avenue of the Americas, is a one-way, northbound roadway; at the time of the accident, five of the six lanes were open to traffic.  *Id.*  Hough was tasked with stopping traffic on Sixth Avenue when necessary to allow vehicles to exit and enter a construction site midway between 22nd and 23rd Streets.  *Id.*

As Margulies reached Hough's position on Sixth Avenue, Hough came into the roadway and stopped traffic; Margulies's car was the first in line of the cars Hough stopped, and was positioned in a middle lane. *Margulies III*, 2013 WL 2149610, at *1-2. One or two construction vehicles exited the worksite, after which Hough continued holding traffic, although neither Margulies nor Zdyb could see any more vehicles exiting the site. *Id.* at *2. Hough continued holding traffic while other cars were "scooting around" Margulies on his left. *Id.* Margulies and Zdyb grew frustrated as the traffic light ahead at 23rd Street passed through two full cycles without any vehicles exiting the construction site. *Id.*

Sometime thereafter, Margulies made eye contact with Hough and tapped or pointed at his watch, signifying his intention to move forward when the light turned green at 23rd Street. *Margulies III*, 2013 WL 2149610, at *2. Hough broke eye contact. *Id.* Margulies revved his engine to communicate his intention to proceed; Margulies testified that he intended to convey that he would move forward regardless of any desire on Hough's part for Margulies to stay parked. *Id.* When the traffic light turned green, Margulies took his foot off the brake, and the car "rolled forward" at a speed of one to two miles per hour. (Tr. 256). *Margulies III*, 2013 WL 2149610, at *2. When Margulies began to roll forward, Hough was not in his lane, and Margulies testified that his intention was to pass around Hough without making contact. (Tr. 237). Instead, Hough backed into Margulies's lane, about a car-length away from Margulies. *Margulies III*, 2013 WL 2149610, at *2. Margulies tried to veer to

4

the left and drive around Hough, but traffic in that lane prevented him from doing so.  *Id.*[2]  Margulies proceeded forward, expecting Hough to get out of the way of his car; Hough held his ground, in Margulies's view, "simply to annoy" him.  *Id.*  Margulies never applied his brake, and hit Hough as a result.  *Id.*  Margulies testified that the entire incident (the "Incident") lasted approximately five seconds.  (Tr. 258).

As to Margulies's state of mind at the time, he testified as follows:

> Q [By counsel for USAA]: What was — what was your judgment processes in terms of driving when you decided not to apply the brakes but continue to roll forward? …
>
> A: I thought Mr. Hough would move out of the way.
>
> Q: So [it] … wasn't an act to hurt Mr. Hough?
>
> A: Of course not, no.
>
> THE COURT: What did you think would happen if he didn't move out of the way?
>
> A: Frankly if he hadn't moved out of the way I would think that what happened is what happened, and I know we're not allowed to discuss the civil judgment, but from having looked at everything he wasn't hurt very much.
>
> THE COURT: Well that's — that's after the fact.
>
> A: No.  I understand, Your Honor, at the speed that I was — what I'm saying is that at the speed that I was going to my mind — I'm not saying — and please, I'm not defending that I continued to move the car, but I

---

[2]    Margulies testified that immediately prior to impact, he "felt that [he] could" maneuver his car around Hough, but when he looked he saw that he would have been hit by other traffic.  (Tr. 258).  Nonetheless, Margulies testified that if he could have moved out of the way to avoid hitting Hough, he would have done so.  (*Id.*).

> was very certain[3] that he would move out of the way,
> and if I had stopped and somebody had said gee, what
> would happen if he moved out of — didn't move out of
> the way all of the way I would think that it would be
> exactly what did happen … which was the slight
> contact and then he stumbled and fell.

(Tr. 257-58).

The Bankruptcy Court noted the significant divergence in Hough's and Margulies's stories about what happened after the point of impact, and ultimately credited Margulies's over Hough's. Hough testified that Margulies hit him in his right leg, and that he thereafter grabbed the top of the hood near the windshield wipers, holding on for "dear life," while Margulies jerked the car to the left and to the right for nearly one half-block in an attempt to dislodge him. Margulies then slammed on his brakes and Hough flew off the car, ultimately landing on his shoulders. The Bankruptcy Court found this testimony incredible and uncorroborated by Hough's medical records. *Margulies III*, 2013 WL 2149610, at *2-3.

Zdyb testified that Margulies's car only "touched" Hough, and that Hough never fell to the ground; however, Zdyb also testified that he averted his eyes at the moment of impact, in order to avoid viewing such a "Seinfeldian" episode. (Tr. 164). *Margulies III*, 2013 WL 2149610, at *2-3. The Bankruptcy Court credited Margulies's testimony the most. Margulies testified that after his car tapped or touched Hough, Hough fell to the ground but got back up

---

[3]     Margulies also testified that he "really didn't" anticipate that he would hit Hough with his car (Tr. 238), and that he did not expect that he would hit Hough when Margulies began moving forward (*id.* at 139).

6

almost immediately.  *Id.*  Margulies drove away without stopping because he believed Hough to be unharmed.  *Id.*

Nearly three years later, on March 10, 2003, Margulies pleaded guilty to misdemeanor assault in the third degree under New York Penal Law § 120.00(2).  (No. 10-04050, Dkt. #1, ¶ 17).[4]

## B.     Proceedings in New York State Court

### 1.     *Hough* v. *Margulies*

Hough initiated a civil action against Margulies on August 4, 2003, in New York State Supreme Court, alleging that Margulies was negligent or grossly negligent in hitting Hough with his car.  *Hough* v. *Margulies*, Index No. 114030/03 (N.Y. County Sup. Ct.).  (No. 10-04050, Dkt. #1, ¶ 18).  The factual allegations in the state court complaint largely echo Hough's testimony at trial before the Bankruptcy Court.  Neither Margulies nor USAA[5] appeared in that action; nor did USAA initiate a declaratory judgment proceeding seeking a determination that it had no duty to indemnify Margulies.  (*Id.* at ¶¶ 19-20).  Moreover, USAA did not timely serve Hough with a notice of disclaimer, in

---

[4]     A person is guilty of misdemeanor assault in the third degree when he "recklessly causes physical injury to another person."  N.Y. Penal Law § 120.00(2).  Under New York Penal Law § 15.05(3), a person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.  The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.  *Margulies III*, 2013 WL 2149610, at *3.

[5]     Margulies was the named insured under a $300,000 automobile liability policy, and a $1,000,000 Personal Umbrella Policy, both of which were in force as of August 3, 2000.  *Margulies III*, 2013 WL 2149610, at *5.

compliance with New York Insurance Law § 3420(d)(2).  *Margulies I*, 476 B.R. at 396.

As a result, Hough obtained a default judgment against Margulies in 2003.  (No. 10-04050, Dkt. #1, at ¶ 22).  Following a damages inquest, Hough was awarded a $3.5 million judgment, including interest and costs, for a total of $4,868,263.56 (the "Judgment").  (*Id.* at ¶¶ 23-24).  Hough has yet to collect on the Judgment.

### 2.   *Hough* v. *USAA*

On December 24, 2007, Hough initiated a proceeding against USAA under New York Insurance Law § 3420, seeking a declaratory judgment that USAA was liable to indemnify Margulies for any damages arising out of the Incident.  (*See* No. 10-04050, Dkt. #1, ¶ 29).  Hough moved for summary judgment, and USAA opposed the motion on the basis that the insurance policies carried by Margulies at the time (the "Policies") did not cover the Judgment, because Margulies had intentionally caused Hough's injuries.  (*Id.* at ¶¶ 30-33).

By a July 1, 2010 Order, the New York State Supreme Court, New York County, concluded that (i) USAA had breached its duty to defend and was therefore precluded from raising defenses to Hough's underlying claim against Margulies; (ii) because Margulies's intent had not in fact been litigated, USAA was not collaterally estopped from raising that issue; (iii) Margulies's plea to a recklessness-based offense did not foreclose a finding that Margulies's actions were "intentional" within the meaning of the Policies; and (iv) material issues of

fact precluded summary judgment as to whether Margulies intended to injure Hough. (No.10-14012, Dkt. #1, Ex. A). Hough appealed the July 1, 2010 Order; after hearing reargument, on May 13, 2011, the state trial court vacated the July 1, 2010 Order only to the extent of dismissing USAA's defense that Margulies failed to cooperate. (No. 10-04050, Dkt. #138-2). The Appellate Division, First Department, affirmed the May 13, 2011 Order in 2012. *See Hough* v. *USAA Cas. Ins. Co.*, 940 N.Y.S.2d 41, 42 (1st Dep't 2012).

**C.     Proceedings Before the Bankruptcy Court**

Margulies filed a Chapter 7 bankruptcy petition on July 26, 2010, and received his discharge on March 17, 2011. (No. 10-14012, Dkt. #1, 34). Hough initiated the instant adversary proceeding (the "Adversary Proceeding," initiated by the "Adversary Complaint") on October 25, 2010, asserting a single claim for alternative relief. (*See* No. 10-04050, Dkt. #1). First, Hough argued that Margulies caused his injuries willfully and maliciously, such that the Judgment was not dischargeable pursuant to 11 U.S.C. § 523(a) (the "Dischargeability Claim"). Second and alternatively, Hough alleged that Margulies did not intentionally cause his injuries, such that Hough was entitled to recover under the Policies pursuant to New York Insurance Law § 3420 (the "§ 3420 Claim"). (*Id.*).

On January 11, 2011, USAA moved to dismiss the Complaint based upon lack of subject matter jurisdiction, for permissive abstention, to stay the adversary proceeding, and to dismiss for failure to state a claim. (No. 10-04050, Dkt. #8). Specifically, USAA asked the Bankruptcy Court to decline to

9

exercise jurisdiction over the § 3420 Claim, which was at that time pending on interlocutory appeal with the Appellate Division.  (*Id.*).  The Bankruptcy Court initially stayed USAA's motion, instead electing to adjudicate Margulies's anticipated summary judgment motion first.

Margulies moved for judgment on the pleadings and summary judgment on November 23, 2011, arguing that his debt should be discharged because his actions were neither willful nor malicious.  (No. 10-04050, Dkt. #20, 23).  Specifically, Margulies argued that Hough was collaterally estopped from asserting that Margulies had acted willfully, having already obtained a Judgment based upon Margulies's negligence.  (*Id.*).  USAA joined in Margulies's motion, also arguing that Hough's Adversary Complaint was barred by collateral estoppel.  (No. 10-04050, Dkt. #25).  Hough argued in response that (i) he was not collaterally estopped from asserting willfulness because the issue of Margulies's intent had not actually been litigated in state court; and (ii) "[d]etermination of willfulness in the context of dischargeability necessarily involves a determination of the identical issue of 'intentional' act for the purposes of coverage under the [Policies]."  (No. 10-04050, Dkt. #29).  The Bankruptcy Court agreed with Hough, and denied Margulies's motion by Opinion and Order dated March 1, 2012, holding that (i) Margulies's willfulness and malice had not actually been litigated below; and (ii) the Adversary Complaint properly stated a claim.  (No. 10-04050, Dkt. #42).[6]  On August 31,

---

[6]     At that time, the matter was assigned to United States Bankruptcy Judge Arthur J. Gonzalez, who retired shortly after rendering this decision.  The matter was subsequently reassigned to United States Bankruptcy Judge Stuart M. Bernstein.

2012, Margulies's motion for reconsideration of the Court's March 1, 2012 decision was denied in *Margulies II*.   2012 WL 3782535, at *1-4.

Subsequently, the Bankruptcy Court decided USAA's motion to dismiss. By Opinion and Order dated August 13, 2012, the Bankruptcy Court held that (i) it had subject matter jurisdiction over the § 3420 claim; (ii) it would not exercise its jurisdiction to abstain from adjudicating that claim; and (iii) Hough's Adversary Complaint stated a claim upon which relief could be granted. *See Margulies I*, 476 B.R. at 398-404.   The Bankruptcy Court also determined that "willful" under the Bankruptcy Code was equivalent to "intentional" for the purposes of the § 3420 Claim, such that it was proper for the Bankruptcy Court to determine both issues simultaneously in order to avoid inconsistent judgments.  *Id.*  Accordingly, the Bankruptcy Court directed the *Hough* v. *USAA* state court matter to be placed in suspense.  *Id.*

Thereafter, Hough and USAA expressly consented to the Bankruptcy Court's ability to enter final judgment on the § 3420 Claim, and the parties proceeded to discovery on both claims.  (*See* No. 10-04050, Dkt. #63, 112). The Bankruptcy Court held trial on December 14, 2012.  The parties submitted pretrial memoranda of law.  As to the Dischargeability Claim, Margulies argued that the proper legal standard was whether he intended to injure Hough, and whether that injury resulted from conduct committed without just cause or excuse.  (No. 10-04050, Dkt. #66).  As to the § 3420 Claim, USAA argued that the Incident did not trigger coverage under the Policies because it was not an

"accident"; USAA defined "accident" as an unexpected, unforeseen, or unusual occurrence from the point of view of the insured.  (No. 10-04050, Dkt. #67).

At trial, the Bankruptcy Court heard testimony from Margulies, Hough, and Zdyb.  (No. 10-04050, Dkt. #74).  Thereafter, the parties submitted proposed findings of fact and post-trial memoranda of law.  (No. 10-04050, Dkt. #92, 96, 99-102, 104).

The Bankruptcy Court issued its post-trial findings of fact and conclusions of law in *Margulies III*, dated May 16, 2013.  (No. 10-04050, Dkt. #115).  The Bankruptcy Court first found that the default judgment was not subject to discharge because it resulted from Margulies's willful and malicious conduct.  Margulies appeals from this determination, arguing that the Bankruptcy Court improperly applied an objective standard, rather than a subjective standard, in determining that his actions were willful.  Second, the Bankruptcy Court found that USAA was not liable to indemnify Margulies for the Judgment, because his actions were intentional.  In reaching that determination, the Bankruptcy Court found that the standard for "willful" as applied to the dischargeability claim was identical to the standard for "intentional" applied to the insurance coverage claim.  Hough cross-appeals from this determination.

The Bankruptcy Court entered final judgment in the adversary proceeding on May 29, 2013.  (No. 10-04050, Dkt. #118).  On June 11, 2013, Margulies filed a notice of appeal from the May 29, 2013 judgment; Hough's cross-appeal followed on June 13, 2013.  (No. 10-04050, Dkt. #119, 121).

12

**D.     The Instant Action**

The parties' respective notices of appeal were docketed by this Court on August 27, 2013.  (Dkt. #1, 2).  Pursuant to a briefing schedule set forth by the Court on September 4, 2013 (Dkt. #6), and amended on September 6, 2013 (Dkt. #7), Margulies's appellate brief was filed on September 30, 2013 (Dkt. #13), and Hough's appellate brief was filed on October 23, 2013 (Dkt. #14).  By letter dated October 24, 2013, Margulies requested the opportunity to file an amended appellate brief, explaining that his previous brief was an "entirely incomplete version" of his proposed amended brief. (Dkt. #15).  On November 6, 2013, the Court granted Margulies's request, and extended the responsive deadlines accordingly.  (Dkt. #19).  USAA's opposition brief was filed on November 22, 2013 (Dkt. #20), and Hough's reply brief was filed on December 13, 2013 (Dkt. #25).

By letter dated February 20, 2014, Hough requested that the Court set a supplemental briefing schedule to address the New York Court of Appeals' recent decision in *K2 Inv. Grp., LLC* v. *Am. Guar. & Liab. Ins. Co.*, 22 N.Y.3d 578, 585-87 (2014) ("*K2*-II"), *reargument denied*, 23 N.Y.3d 939 (2014), which reversed its previous decision in *K2 Inv. Grp., LLC* v. *Am. Guar. & Liab. Ins. Co.*, 21 N.Y.3d 384 (2013) ("*K2*-I"), *reargument granted*, 21 N.Y.3d 1049 (2013), *and vacated*, 22 N.Y.3d 578 (2014), *reargument denied*, 23 N.Y.3d 939 (2014).  (Dkt. #29).  USAA joined in Hough's request on February 21, 2014, noting that the parties had "argued extensively about the impact of the *K2*-I decision" in their previous briefs, and that the *K2*-II reversal was "significant" to the appeal.

13

(Dkt. #30).  Accordingly, the Court rejected the previously-filed appellate briefs, and set a new briefing schedule (Dkt. #31), which was subsequently extended twice at the request of the parties (Dkt. #34-37).  Margulies's appellate brief was filed finally on June 6, 2014 (Dkt. #38); Hough's appellate brief was filed on June 20, 2014 (Dkt. #39); USAA's opposition brief was filed on July 7, 2014 (Dkt. #40); and Hough's and Margulies's reply papers were filed on July 22, 2014 (Dkt. #41), and July 28, 2014 (Dkt. #42).

## DISCUSSION

### A.    The Standard of Review

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts.  A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.

In general, a district court reviews a "Bankruptcy Court's findings of fact for clear error [and] its conclusions of law de novo."  *In re Bayshore Wire Products Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) (internal citations omitted); *see also In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012) ("Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." (citing Fed. R. Bankr. P. 8013)), *cert. denied*, 133 S. Ct. 2021 (2013).  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous," *In re Artha Mgmt., Inc.*, 91 F.3d 326, 328 (2d Cir.

14

1996), and "due regard shall be given to the opportunity of the bankruptcy court to judge credibility of the witnesses," *In re Lafayette Hotel P'ship*, 227 B.R. 445, 448 (S.D.N.Y. 1998).  A finding is "'clearly erroneous'" when the reviewing court is "left with the definite and firm conviction that a mistake has been made."  *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

**B.      Analysis**

      **1.      The Dischargeability Claim**

            **a.      Applicable Law**

The Bankruptcy Code precludes discharge for any debt that is the result of a "willful and malicious injury by the debtor to another."  11 U.S.C. § 523(a)(6).  "As used in that section, the word 'willful' indicates 'a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury.'"  *Ball* v. *A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Kawaauhau* v. *Geiger*, 523 U.S. 57, 61 (1998) (emphasis in *Geiger*)).  Next, "[t]he injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'"  *Id.* (quoting *Navistar Fin. Corp.* v. *Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996)).  Malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances."  *In re Stelluti*, 94 F.3d at 88 (alteration in original) (internal quotation marks omitted).  "The terms 'willful' and 'malicious' are separate elements, and both elements must

be satisfied." *Rupert* v. *Krautheimer (In re Krautheimer)*, 241 B.R. 330, 341 (Bankr. S.D.N.Y. 1999) (internal citation omitted).

Hough bears the burden of demonstrating non-dischargeability by a preponderance of the evidence.  *Grogan* v. *Garner*, 498 U.S. 279, 291 (1991). The Supreme Court has instructed that in order to promote the general goal of the Bankruptcy Code — providing bankrupt debtors with a fresh start — any "exceptions to discharge 'should be confined to those plainly expressed.'" *Geiger*, 523 U.S. at 62 (quoting *Gleason* v. *Thaw*, 236 U.S. 558, 562 (1915)).

Finally, the determination of whether a particular debt should be excepted from discharge under § 523(a)(6) is a legal conclusion that falls within the exclusive jurisdiction of the bankruptcy courts.  *See* 11 U.S.C. § 523(c). Accordingly, *res judicata* does not bar the bankruptcy court from deciding the issue of whether a debt is dischargeable, even when similar issues have already been decided by a state court of competent jurisdiction.  *Brown* v. *Felsen*, 442 U.S. 127, 138-39 (1979).

### b.   Willfulness

Margulies contends principally that the Bankruptcy Court improperly applied an objective standard in determining that his actions were willful and not subject to discharge.  (Margulies Br. 12-16).  He is correct.

The Supreme Court has instructed that

> [t]he word "willful" in [§ 523(a)(6)] modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally

> inflicted injuries, it might have described instead
> "willful acts that cause injury."

*Geiger*, 523 U.S. at 61-62 (emphasis in original).  In *Geiger*, the Supreme Court

considered whether, in the context of § 523(a)(6), "willfulness" encompassed

"acts, done intentionally, that cause injury…, or only acts done with the actual

intent to cause injury."  523 U.S. at 61.  Citing the RESTATEMENT (SECOND) OF

TORTS (1964) (the "Restatement"), the Court held that § 523(a)(6) encompassed

"'intentional torts,' as distinguished from negligent or reckless torts.

Intentional torts generally require that the actor intend 'the *consequences* of an

act,' not simply 'the act itself.'"  *Id.* at 61-62 (emphasis in *Geiger*) (quoting

Restatement § 8A, cmt. *a*).

　　The section of the Restatement cited favorably in *Geiger* provides further

that intent is found when "the actor desires to cause consequences of his act,

or that he believes that the consequences are substantially certain to result

from it."  Restatement § 8A, cmt. *a*.  Comment *b* continues,

> If the actor knows that the consequences are certain, or
> substantially certain, to result from his act, and still
> goes ahead, he is treated by the law as if he had in fact
> desired to produce the result.  As the probability that
> the consequences will follow decreases, and becomes
> less than substantial certainty, the actor's conduct
> loses the character of intent, and becomes mere
> recklessness…. As the probability decreases further,
> and amounts only to a risk that the result will follow, it
> becomes ordinary negligence…. All three have their
> important place in the law of torts, but the liability
> attached to them will differ.

*Id.*, cmt. *b*.  Although *Geiger* did not specifically incorporate the Restatement's

"substantial certainty" test, courts that have considered this issue post-*Geiger*

have relied upon *Geiger*'s favorable reference to that section of the Restatement in defining intent — for the purposes of § 523(a)(6) — as either a deliberate intent to cause the injury, or a substantial certainty that the injury will occur.

There remains, however, a long-standing split among the Circuits as to whether that substantial certainly must be judged subjectively or objectively. *Compare In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) ("[W]e now hold that unless 'the actor desires to cause the consequences of his act, or ... believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." (internal citations omitted)); *In re Thoms*, 505 F. App'x 603, 605 (8th Cir. 2013) (summary order) (noting that "[w]e construe the § 523(a)(6) exception narrowly," and holding that "[i]f the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences" (internal citations omitted)); *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010) (requiring creditor to show that "debtor believes that injury is substantially certain to result from his own conduct"); *In re Englehart*, 229 F.3d 1163 (10th Cir. 2000) (applying the subjective standard, and rejecting the objective standard as "at odds with the considerations discussed [in *Geiger*]" (internal citations omitted)), *with In re Shcolnik*, 670 F.3d 624, 630 (5th Cir. 2012) (finding willfulness where creditor showed an "objective substantial certainty of harm" (internal citations omitted)); *see also In re Kane*, 755 F.3d 1285, 1293 (11th Cir. 2014)

18

(recognizing the Circuit split, and applying the subjective standard as "more stringent," without deciding which standard applies).

In a recent Seventh Circuit opinion, Judge Posner recognized the divergence among Circuit courts on this issue, observing ultimately that

> whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act.

*Jendusa-Nicolai* v. *Larsen*, 677 F.3d 320, 324 (7th Cir. 2012).  Though the Second Circuit has yet to opine on the issue, courts within this Circuit have largely applied the subjective standard.  *See, e.g.*, *Citik Ka Wah Bank Ltd. N.Y. Branch* v. *Wong (In re Wong)*, 291 B.R. 266, 280 (Bankr. S.D.N.Y. 2003) ("An act is willful when the debtor intends to inflict the injury or knew that the injury was substantially certain to result." (internal citations omitted)); *In re Alicea*, 230 B.R. 492, 507 (Bankr. S.D.N.Y. 1999) ("'Willful,' as used in § 523(a)(6), means 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury,' and includes conduct that the actor is substantially certain will cause injury." (internal citations omitted)); *In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998) (willfulness "includes conduct that the actor is substantially certain will cause injury" (internal citations omitted)).

This Court joins in endorsing the subjective standard.  It accords better with the Supreme Court's directive in *Geiger*, *see* 523 U.S. at 61 ("nondischargeability takes a deliberate or intentional *injury*" (emphasis in

19

original)), as well as the Restatement definition that is cited favorably in *Geiger*, *see* Restatement § 8A ("the actor … believes that the consequences are substantially certain to result from [his action]").  A subjective standard is also in keeping with the Bankruptcy Code's focus on intentional conduct by the debtor.  An objective standard, by contrast, looks past the actual will or intent of the debtor, and instead considers an objective observer's understanding of whether the injury was substantially certain to occur.  This inquiry sounds more in recklessness than intent.  *Cf. Geiger*, 523 U.S. at 61 (willfulness encompasses intentional, not reckless, torts).

The Bankruptcy Court erred by collapsing the distinction between the objective and subjective standards of intent, and thereby applying a quasi-objective standard.  Specifically, the Bankruptcy Court cited decisions from, among others, both the Fifth and the Ninth Circuits, in holding that a plaintiff must prove "that the debtor actually intended to injure the victim, or engaged in conduct *that was substantially certain* to cause injury."  *Margulies III*, 2013 WL 2149610, at *3-4 (emphasis added).  As discussed above, the Ninth Circuit advocates a subjective standard, while the Fifth Circuit advocates an objective standard.  *Compare In re Ormsby*, 591 F.3d at 1206 (requiring creditor to show that "debtor believes that injury is substantially certain to result from his own conduct"), *with In re Shcolnik*, 670 F.3d at 630 (finding willfulness where creditor showed an "objective substantial certainty of harm").  Thus, while the Bankruptcy Court found that Margulies had no subjective intent to harm Hough, *see* 2013 WL 2149610, at *4, it applied an objective standard in finding

that Margulies's actions were substantially certain to cause injury to Hough,
*see id.* ("Margulies drove at Hough *and it was substantially certain he would
injure* Hough if Hough did not get out of the way of his car.  Margulies therefore
acted willfully.").

While Margulies's testimony at trial indicated that he did not anticipate
hitting Hough (*see* Tr. 256-57 ("I'm not defending that I continued to move the
car, but I was very certain that he would move out of the way"), 238 (Margulies
"really didn't" anticipate hitting Hough), 139 (Margulies did not expect that he
would hit Hough when Margulies's car began "rolling" forward)), the
Bankruptcy Court made no specific factual findings as to whether Margulies
himself was substantially certain that his actions would injure Hough.
Accordingly, the matter is remanded for further factual development on this
issue and application of a subjective standard.

### c.    Malice

While the Supreme Court did not address the meaning of "malicious" in
*Geiger*, the Second Circuit has defined the term in the context of the
Bankruptcy Code to mean "wrongful and without just cause or excuse, even in
the absence of personal hatred, spite, or ill-will."  *In re Stelluti*, 94 F.3d at 87.
Moreover, malice may be implied by the acts and conduct of the debtor in the
context of the surrounding circumstances.  *Id.* at 88; *In re Mitchell*, 227 B.R.
45, 51 (Bankr. S.D.N.Y. 1998) ("Malice is implied when 'anyone of reasonable
intelligence knows that the act in question is contrary to commonly accepted

duties in the ordinary relationships among people, and injurious to another.'" (internal citation omitted)).

Malice is properly found where "the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor." *Novartis Corp.* v. *Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998); *see also Ball*, 451 F.3d at 71 ("As we view conduct that is undertaken without just cause or excuse as unreasonable, and acts that are performed for an improper purpose as wrongful, we conclude that the facts found by [the lower court] encompassed the concept of malice as used in § 523(a)(6).").

The Bankruptcy Court found that Margulies's actions were malicious because Margulies offered no excuse for injuring Hough, and held that Margulies's decision to drive towards Hough in order to force him out of the way was in derogation of "commonly accepted duties in the ordinary relationships among people." 2013 WL 2149610, at *4 (internal citation omitted). Its decision that the record supported a finding of malice may ultimately prove to be correct. However, in reaching this decision, the Bankruptcy Court relied upon its finding that Margulies acted willfully to injure Hough. *Id.* (holding that Margulies's "expectation that Hough would blink first hardly excused his act of putting Hough at such risk"). Because the Bankruptcy Court's finding of malice was inextricably tied to its finding of willfulness, which was rendered based upon an improper objective standard,

the matter is remanded for reconsideration in light of the Court's decision on the proper willfulness standard.

In this regard, Margulies argues that his actions were motivated by economic benefit — that is, arriving punctually at an important business meeting — and cannot therefore be deemed malicious.  (Margulies Br. 25-26).  To be sure, in cases where a debtor seeks profit or some other benefit, "'the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in *[Stelluti]*.'"  *In re Rouette*, No. 13-20250 (ASD), 2014 WL 2708312, at *9 (Bankr. D. Conn. June 12, 2014) (quoting *In re Luppino*, 221 B.R. at 700); *see also id.* (holding that debtor's actions were not willful where "there was a creditor which [the debtor] chose to pay first and thought that it was in [his] financial interest to do so").  Here, the Bankruptcy Court made no factual findings as to whether Margulies's actions were motivated by this (perhaps tenuously related) economic benefit, and thus the record does not permit appellate review of this issue.  On remand, the Bankruptcy Court should consider whether Margulies's "conduct … ha[d] no potential for economic gain or other benefit to [Margulies], from which one could only conclude that [Margulies's] motivation must have been to inflict harm upon [Hough]."  *In re Luppino*, 221 B.R. at 700.[7]

---

[7]    Margulies takes issue with the application of the "without just cause or excuse" standard applied widely within this Circuit, as being impermissibly vague.  (Margulies Br. 24-26).  Unquestionably, this is the prevailing law in the Circuit.  At its core, however, Margulies's dispute is with what he perceives to be the Bankruptcy Court's

### 2.     The § 3420 Claim

#### a.     Applicable Law

The Court turns next to Hough's cross-appeal from the Bankruptcy Court's determination that Margulies's actions were intentional — and thus not covered by, and indeed affirmatively excluded by, the Policies.[8]  Hough contends that the Bankruptcy Court erred by relying on the Policies' exclusions to deny coverage, and asserts for the first time on appeal that the doctrine of *res judicata* bars USAA from arguing that Margulies's actions were intentional. For the reasons discussed below, the matter is remanded for further factual proceedings in order to determine whether the Incident was covered by the Policies.

Hough bears the initial burden of proving that the damage was the result of an accident or occurrence in order to establish coverage where it would not otherwise exist; the burden then shifts to USAA to prove that an exclusion applies to defeat coverage.  *Consol. Edison Co. of N.Y.* v. *Allstate Ins. Co.*, 98 N.Y.2d 208, 218-21 (2002).  However, New York law limits the extent to which insurers who breach their duties to disclaim coverage, or to defend their insureds, may rely upon exclusions to deny coverage.

---

disregard of his subjective intentions and assumptions.  (*Id.*).  Those are relevant to the application of the willfulness standard, and the Court's decision herein addresses his concerns in that respect.

[8]     New York Insurance Law § 3420 permits Hough to stand in Margulies's shoes in pursuing this indemnification action, and he has no greater rights than would Margulies.  *D'Arata* v. *N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (1990) ("Under Insurance Law § 3420(b)(1) plaintiff is permitted to maintain a direct action against the insurer on the policy.  In doing so, plaintiff 'stands in the shoes' of the insured and can have no greater rights than the insured." (internal citation omitted)).

An insurer's duty to disclaim arises from Insurance Law § 3420(d), and it is satisfied when "the insurer provides a notice of disclaimer 'as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability.'" *Adams* v. *Perry's Place*, 564 N.Y.S.2d 1019 (4th Dep't 1990) (internal citation omitted); *see also Zappone* v. *Home Ins. Co.*, 55 N.Y.2d 131, 135-36 (1982) (noting that Insurance Law § 3420(d) "was enacted to avoid prejudice to the insured, [and] the injured claimant ... [who] could be harmed by delay in learning of the carrier's position" (internal citation omitted)).  If an insurer breaches its duty to disclaim coverage in a timely manner, it may not rely upon exclusions to deny coverage.  *Worcester Ins. Co.* v. *Bettenhauser*, 95 N.Y.2d 185, 189 (2000) (holding that a disclaimer of liability is required when "denial of coverage is based upon an exclusion set forth in a policy without which the claim would be covered" (citing *Zappone*, 55 N.Y.2d at 134, 138)).  Notably, however, an insurer has no duty to disclaim if a claim falls outside the scope of a policy's coverage, because "[u]nder those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed." *Id.*, 95 N.Y.2d at 189; *see also NGM Ins. Co.* v. *Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010) (citing *Zappone* for the proposition that notice pursuant to § 3420 is required where there is no

coverage "by reason of exclusion," but not where there is no coverage "by reason of lack of inclusion").[9]

The parties do not dispute that USAA failed to serve Hough with a notice of disclaimer pursuant to § 3420(d)(2). *In re Margulies*, 476 B.R. at 396. USAA argued that it had no duty to disclaim coverage because the Incident was not a covered "occurrence" within the meanings of the Policies. The issue, then, was whether the Policies provided coverage for the Incident by reason of "inclusion," not "exclusion." That is, if the Incident was a covered "occurrence," then USAA breached its duty to defend and may not rely upon the Policy's exclusions to deny coverage. If, however, the Incident was not a covered "occurrence," then USAA need not resort to the exclusions to deny coverage that never existed.

### b.   Whether the Incident Was Intentional

The Policies provided coverage for "occurrences" not excluded by the Policies; occurrences are defined as "accidents," but the term "accidents" is

---

[9]    Insurers who breach their duty to defend are similarly precluded from relying on a policy's exclusions to deny coverage. *See Auto. Ins. Co. of Hartford* v. *Cook*, 7 N.Y.3d 131, 137 (2006) ("It is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is exceedingly broad and an insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage. If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." (internal citations omitted)). However, as the New York Court of Appeals has recently affirmed, an insurer's breach of its duty to defend generally does not preclude that insurer from invoking policy exclusions as a defense to the insured's claim for indemnification. *K2-II*, 22 N.Y.3d at 585-87; *see also Servidone Constr. Corp.* v. *Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419 (1985) (insurer who breached its duty to defend was entitled to raise policy exclusions as a defense to a claim for indemnification). USAA contends that the Bankruptcy Court properly relied upon the Policies' exclusions to deny coverage on this basis. (USAA Opp. 21-22). The Court need not reach this issue, however, having remanded on the determination of whether coverage exists in the first instance.

undefined.  *Margulies III*, 2013 WL 2149610, at *5-6.  As the Second Circuit

has noted, courts interpreting the term "accident or occurrence"

> have determined that liability coverage depends upon
> whether the alleged injury was intentionally caused or
> was an unintended, although foreseeable, result of the
> alleged intentional conduct.  The distinction is drawn
> between damages which flow directly and immediately
> from an intended act, thereby precluding coverage, and
> damages which accidently arise out of a chain of
> unintended though expected or foreseeable events that
> occurred after an intentional act.  Ordinary negligence
> does not constitute an intention to cause damage;
> neither does a calculated risk amount to an expectation
> of damage.  *To deny coverage, then, the fact finder must
> find that the insured intended to cause damage.*

*Brooklyn Law Sch.* v. *Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988)

(collecting cases) (emphasis added).  "Thus, though an *intentional* act may

ultimately cause certain damages, those damages may, under New York law, be

considered 'accidental' if the 'total situation could be found to constitute an

accident' ….  In general, what make injuries or damages expected or intended

rather than accidental are the knowledge and intent of the insured."  *City of

Johnstown, N.Y.* v. *Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir.

1989) (collecting cases) (emphasis in original).

The Bankruptcy Court found that while Margulies did not have the

subjective intent to injure Hough, his actions were "substantially likely" to

cause injury to Hough and were thus intentional.  In reaching this

determination, the Bankruptcy Court relied upon its finding in the

Dischargeability Section, which, as noted, was improperly premised on an

objective standard.  More importantly, the standards applicable to the

Dischargeability Claim and the § 3420 Claim differ in a small, but meaningful, respect: "Willfulness" for the purposes of the Bankruptcy Code asks whether Margulies was "substantially certain" his actions would result in injury to Hough, whereas "intent" for the purposes of the New York Insurance Law, as discussed below, targets Margulies's knowledge and intention as to whether his acts would "directly and immediately" cause Hough injury, *as well as* whether the "whole situation" constituted an "accident." Thus, a debtor could fail to be "substantially certain" that his conduct during a particular incident would result in injury (for the purposes of dischargeability), while the circumstances of that incident, considered in their totality, could nonetheless render the incident not accidental (for the purposes of insurance coverage).

More fundamentally, the Bankruptcy Court's definition of intent was improper because it relied upon the Policies' "intentional act" exclusion to define "intentional" when determining whether coverage existed in the first instance. *Margulies III*, 2013 WL 2149610, at *5 ("[T]he Policies *expressly excluded* liability coverage for personal injury and property damage resulting from an intentional act."; "In *Margulies I,* the Court explored the definitions of 'willful and malicious' under 11 U.S.C. § 523(a)(6) and 'intentional' acts under the law relating to *insurance exclusions* and concluded that they appeared to be identical." (emphases added)); *see also id.* at *6 ("The Policies were received into evidence at the trial, and their terms confirm that 'willful and malicious' acts were not covered 'accidents' and fell under the exclusion for intentional acts.").

To be sure, Margulies's intent is at issue in both the coverage and the exclusion provisions in the Policies — an illustration of just how "problematic" it can be to distinguish "coverage by reason of exclusion as opposed to lack of inclusion." *NGM Ins. Co.*, 593 F.3d at 153 (quoting *Worcester Ins. Co.*, 95 N.Y.2d at 189). Yet this distinction is made even more important here because the Policies' exclusions judge "intent" from an objective standpoint ("conduct that would be reasonably expected to result in [injury]"), while New York law imparts more subjectivity to the analysis, *see City of Johnstown, N.Y.*, 877 F.2d at 1150 ("[W]hat make injuries or damages expected or intended rather than accidental are the knowledge and intent of the insured." (collecting cases)). On remand, the Bankruptcy Court should determine whether Hough's injury is the sort that "flow[s] directly and immediately from an intended act, thereby precluding coverage, [or whether it arose] accidently … out of a chain of unintended though expected or foreseeable events that occurred after an intentional act." *Brooklyn Law Sch.*, 849 F.2d at 789 (internal citations omitted).[10]

---

[10]     USAA cites a number of cases in which the insured's actions were deemed to be intentional, and thus not covered, in arguing that the Bankruptcy Court's decision should be affirmed. (*See* USAA Br. 13-18). *See, e.g., State Farm Fire & Cas. Co.* v. *Whiting*, 53 A.D.3d 1033, 1034 (4th Dep't 2008) (insured's actions were intentional where he testified that he "intended to hit" the plaintiff, and knew that the plaintiff might be injured as a result); *Salimbene* v. *Merchants Mut. Ins. Co.*, 217 A.D.2d 991, 994 (4th Dep't 1995) (where insured threw rocks at the plaintiff's car intending to either injure the plaintiff or frighten him, that assault was not an "occurrence" within the meaning of the policies, because it was not unintended from the perspective of the insured); *City of Johnstown, N.Y.*, 877 F.2d at 1150 (where insured was accused of negligently allowing hazardous materials to be dumped in its landfill, resulting environmental damage was "accidental" since there was no evidence that insured intended the damage, nor knew any damage would flow directly and immediately from the dumping). The Court cannot engage in this analysis, however, because the record

USAA argues that Margulies's actions were "inherently intentional" and could never be deemed accidental, notwithstanding Margulies's lack of subjective intent to harm Hough.  (USAA Opp. 13-18).  It is well-established that "[w]hen the alleged harm is an inherent result of the act … intent to injure will be inferred as a matter of law from the intentional character of the conduct."  *Dodge* v. *Legion Ins. Co.*, 102 F. Supp. 2d 144, 151 (S.D.N.Y. 2000) (citing *Allstate Ins. Co.* v. *Mugavero*, 79 N.Y.2d 153, 160 (1992) (sexual abuse of a minor child was inherently intentional because the "cause and effect cannot be separated; … to do the act is necessarily to do the harm which is its consequence")).  However, the majority of courts following the rule announced in *Mugavero* "apply the inferred intent rule to claims of sexual abuse of children and non-consensual sexual intercourse."  *Dodge*, 102 F. Supp. 2d at 151 (collecting cases).  This is not such a case.

USAA relies on a different type of case in which the inherent intent doctrine was applied, *Progressive N. Ins. Co.* v. *Rafferty*, 793 N.Y.S.2d 618 (3rd Dep't 2005).  In *Rafferty*, the court determined that the plaintiff's "injuries were inherent in the act of placing a car in forward motion when but two feet of space existed between the car, a pedestrian and an immovable object, clearly invoking the intentional act exclusion."  To be sure, there are factual dissimilarities between *Rafferty* and the instant case: the parties in *Rafferty* knew each other and had fought prior to the incident; Hough and Margulies

---

on appeal is insufficient to determine whether the Incident was covered by the Policies, and the matter is remanded for that reason.

did not.  The *Rafferty* plaintiff had stood between the car and the garage door, with nowhere to escape; Hough backed into Margulies's lane, and stood his ground; nonetheless, Margulies failed to apply the brakes before hitting Hough. USAA ripostes that blaming the victim does not in itself create fortuity.  (USAA Opp. 13).[11]  That may be.  Yet these dissimilarities may cause the Bankruptcy Court on remand to conclude, or not to conclude, that the situation, considered as a whole, was accidental from Margulies's perspective.

### c.      Whether the Incident Was Fortuitous

To demonstrate that the Policies cover the Incident, Hough must also show that the Incident was "fortuitous," in that it was not expected or intended by Margulies.  This requirement is drawn from New York Insurance Law § 1101(a)(1), which defines an "insurance contract" as "any agreement whereby one party, the 'insurer,' is obligated to confer benefit of pecuniary value upon another party, the 'insured,' dependent upon the happening of a fortuitous event."  A "fortuitous event" is defined as "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the

---

[11]      Relatedly, USAA points to *Messersmith* v. *Am. Fid. Co.*, 232 N.Y. 161, 164 (1921), for the proposition that it is against public policy to provide insurance for intentionally caused injuries.  *See Margulies III*, 2013 WL 2149610, at *5 (quoting *Messersmith*); *see also K2-I*, 21 N.Y.3d at 391 (casting doubt on the Appellate Division's decision in *Hough*, but citing *Messersmith* in noting that "[t]he *Hough* decision could arguably be justified on the ground that insurance for one's own intentional wrongdoing is contrary to public policy").  Indeed, "[s]uch a rule is in keeping with a longstanding line of cases in which state courts have refused to allow an insured to be indemnified from liability resulting from the insured's intentional causation of an injury."  *Mass. Mut. Life Ins. Co.* v. *Millstein*, 129 F.3d 688, 691 (2d Cir. 1997) (collecting cases and citing, *inter alia*, *Messersmith*).  It is worth noting here that *Messersmith* is applicable only to the extent the Bankruptcy Court finds Margulies's actions to be intentional within the meaning of New York insurance law; the Bankruptcy Court determined, however, that Margulies lacked the subjective intent to injure Hough.

control of either party." *Id.* § 1101(a)(2); *see also Consol. Edison Co. of N.Y., Inc.*, 98 N.Y.2d at 220 (same).  Generally, "[a] loss is fortuitous unless it results from an inherent defect, ordinary wear and tear, or intentional misconduct of the insured." *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (quoting *Ingersol Milling Mach. Co.* v. *M/V Bodena*, 829 F.2d 293, 307-08 (2d Cir. 1987)).  To this end, the Second Circuit has instructed that "the determination whether a suffered loss … was fortuitous and, therefore, covered by the policy must be made from the perspective of the insureds." *Highland Capital Mgmt., L.P.* v. *Global Aerospace Underwriting Managers Ltd.*, 488 F. App'x 473, 475 (2d Cir. 2012) (summary order); *Jewish Cmty. Ctr. of Staten Island* v. *Trumbull Ins. Co.*, 957 F. Supp. 2d 215, 235 (E.D.N.Y. 2013) (surveying New York decisions interpreting "accident or occurrence," and holding that whether an incident was "unexpected, unusual and unforeseen" should be judged from the point of view of the insured), *appeal withdrawn* (Dec. 3, 2013).

The Bankruptcy Court determined that the situation was not accidental, but did not specifically make this determination from Margulies's point of view. *Margulies III*, 2013 WL 2149610, at *6 ("[D]riving forward toward Hough who was only a few feet away was not an 'accident' covered by the Policies ...."); *see also id.* at *3 (noting Margulies's criminal plea to recklessness, or a "conscious[] disregard[ of] a substantial and unjustifiable risk that [Hough would be injured]'").  Rather than shoehorn the Bankruptcy Court's various factual findings into this legal standard, this Court believes that the more prudent

32

course is to remand the matter, in order to allow the Bankruptcy Court to determine whether the Incident was fortuitous from Margulies's perspective. *See In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993) ("If the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings." (internal citation omitted)).

### d.   Whether USAA Is Barred by the Doctrine of *Res Judicata*

Lastly, Hough argues that the doctrine of *res judicata* bars USAA from relitigating Margulies's intent.[12]   Preliminarily, the Court has no jurisdiction to consider this argument because it was raised for the first time on appeal.   In order to preserve an issue for appellate review by the district court, the issue must be raised sufficiently below to permit the bankruptcy court to rule on it. *See Carlisle Ventures, Inc.* v. *Banco Espanol de Credito, S.A.*, 176 F.3d 601, 609-10 (2d Cir. 1999); *see also Amalgamated Clothing and Textile Workers Union* v. *Wal-Mart Stores, Inc.*, 54 F.3d 69, 72-73 (2d Cir. 1995) (declining to consider appellant's argument that was not raised in district court absent a showing of manifest injustice or extraordinary need).   Hough contends that he did raise *res judicata* below, having mentioned those words in one of his proposed factual findings.   (Hough Reply 9).   However, Hough indisputably did not raise this issue in his moving papers before the Bankruptcy Court at any

---

[12]   The Court finds USAA's and Hough's arguments regarding judicial estoppel to be equally unavailing.   (USAA Br. 25-27; Hough Reply 6-8).   Hough and USAA have each attempted to use the Judgment as both a sword and a shield when it suited them in this litigation.   The Court recognizes, however, that this is more an outgrowth of Hough's alternative claims for relief than any indication of bad faith.

point in the three years the matter was pending before that court.  Moreover,

merely mentioning or stating an issue in a brief is insufficient to preserve an

issue for appellate review.  *See Niagara Mohawk Power Corp.* v. *Hudson River-*

*Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012).  Instead, the

lower court must have been presented with an opportunity to rule upon the

issue; this did not happen here.  *Brown* v. *Coleman*, 514 F. App'x 6, 8 (2d Cir.

2013) (summary order) ("[M]erely mentioning or stating an issue in a brief is

insufficient to present an issue for appellate review." (citing *Niagara Mohawk*

*Power Corp.*, 673 F.3d at 107)).

　　　A district court retains the ability to consider an issue not raised below

to the extent it is necessary to prevent manifest injustice.  Generally, however,

no manifest injustice results from an appellate court's refusal to hear a claim

raised for the first time on appeal where a party clearly had the opportunity to

raise the claim below.  *See Mellon Bank, N.A.* v. *United Bank Corp. of N.Y.*, 31

F.3d 113, 116 (2d Cir. 1994).  That maxim is plainly applicable here:  Hough

could have raised this *res judicata* issue below, or in the various state court

proceedings, yet chose not to; his decision both precludes this Court's review of

the issue and demonstrates the lack of harm resultant to Hough.[13]

---

[13]　　USAA contends that the *Rooker-Feldman* doctrine precludes this Court from revisiting
the state court decision finding that USAA was not collaterally estopped from asserting
Margulies's intent as a defense.  (USAA Br. 27-28).  First, the state court rendered its
decision based upon the doctrine of collateral estoppel; Hough raises an argument
based upon the distinct, though related, doctrine of *res judicata*.  *Hough* v. *USAA Cas.*
*Ins. Co.*, 940 N.Y.S.2d at 42 ("Since the underlying action culminated in a default
judgment and the issue whether the insured's acts were intentional or negligent was
not litigated, defendant is not collaterally estopped to assert in this action that its
insured caused plaintiff's injuries intentionally." (internal citation omitted)).  Second
and more importantly, the Court need not address this issue since this Opinion does
not revisit or call into question any of the state court decisions.  And even if it did, the

Hough's *res judicata* argument fails on the merits as well.  The doctrine

of *res judicata* holds that "a final judgment on the merits of an action precludes

the parties or their privies from relitigating issues that were or could have been

raised in that action."  *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980) (citing

*Cromwell* v. *County of Sac*, 94 U.S. 351, 352 (1876)).  To make out an

affirmative defense of *res judicata*, "a party must show that [i] the previous

action involved a final adjudication on the merits; [ii] the previous action

involved the plaintiffs or those in privity with them; and [iii] the claims asserted

in the subsequent action were, or could have been, raised in the prior action."

*Monahan* v. *N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (quoting

*Allen*, 449 U.S. at 94) (alterations omitted).  The Second Circuit has instructed,

however, that the "'could have been' language of the third requirement is

something of a misnomer.  The question is not whether the applicable

procedural rules *permitted* assertion of the claim in the first proceeding; rather,

the question is whether the claim was sufficiently related to the claims that

were asserted in the first proceeding that it *should have been* asserted in that

proceeding."  *Pike* v. *Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (emphasis in

---

*Rooker-Feldman* doctrine is inapplicable to the instant case.  Application of the doctrine has four requirements: (i) "the federal-court plaintiff must have lost in state court"; (ii) "the plaintiff must complain of injuries caused by a state-court judgment"; (iii) "the plaintiff must invite district court review and rejection of that judgment"; and (iv) "the state-court judgment must have been rendered before the district court proceedings commenced."  *Morrison* v. *City of New York*, 591 F.3d 109, 112 (2d Cir. 2010) (quoting *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-89 (2005)) (internal quotation marks omitted).  *Hough* v. *USAA* proceeded in parallel with the Adversary Proceeding for quite some time; thus, "*Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation."  *Morrison*, 591 F.3d at 112 (quoting *Hoblock* v. *Albany Cty. Bd. of Elections*, 442 F.3d 77, 85 (2d Cir. 2005)).

original) (citing *Kane* v. *Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)
(stating that one of the elements of res judicata is "an issue in the subsequent
action which was litigated or which should have been litigated in the prior
action")).

As to the first two elements of Hough's claimed *res judicata* argument,
the Judgment was a final adjudication on the merits, and the Court assumes
*arguendo* that USAA and Margulies are in privity, though USAA was not a party
to the state court action.  *See Hinchey* v. *Sellers*, 7 N.Y.2d 287, 295 (1959)
(finding privity "by virtue of the indemnitor-indemnitee relationship existing
between an insurer and an insured").  Yet Hough fails to satisfy the third
element, since USAA could not have raised Margulies's intent as a defense to
Hough's negligence claim.  *See Hough* v. *USAA Cas. Ins. Co.*, 940 N.Y.S.2d at 42
("Defendant's disclaimer of its duty to defend its insured in the underlying
action does not bar it from asserting that its insured injured plaintiff
intentionally, because that assertion is not a defense extending to the merits of
plaintiff's personal injury claims against the insured." (internal citation
omitted)).  USAA could not have raised Margulies's intent in the underlying
action, not only because to do so would have sacrificed Margulies at the altar of
USAA, but also because this argument could not serve as a valid defense to a
claim of negligence.  *See Schneider* v. *Revici*, 817 F.2d 987, 995 (2d Cir. 1987)
(discussing defenses to negligence).

Hough contends that USAA could have defended Margulies subject to a
reservation of rights.  (Hough Reply 3-5).  Doing so, however, would not

actually have litigated the issue of Margulies's intent.  It is precisely for this reason that insurers are advised to initiate declaratory judgment proceedings as to coverage, separate and apart from the underlying action.  *See K2*-II, 22 N.Y.3d at 585 (quoting *Lang* v. *Hanover Ins. Co.*, 3 N.Y.3d 350, 356 (2004) ("[A]n insurance company that disclaims in a situation where coverage may be arguable is well advised to seek a declaratory judgment concerning the duty to defend or indemnify the purported insured.")).  Plainly, Margulies's intent could not have been raised by USAA in the underlying action, nor should it have been.  *See Pike*, 266 F.3d at 91.  On this basis, USAA is not precluded from litigating Margulies's intent on remand.

## CONCLUSION

For the reasons set forth in the Opinion, the May 16, 2013 judgment of the Bankruptcy Court is VACATED, and the action is REMANDED for proceedings and further factual findings consistent with this decision.

Specifically, as to the Dischargeability Claim, the Bankruptcy Court should consider on remand (i) whether Margulies was substantially certain that Hough's injuries would occur, and if he was not, (ii) whether that finding impacts the Bankruptcy Court's determination that Margulies's actions were malicious; as well as (iii) whether Margulies's actions were undertaken for the purpose of economic benefit.

As to the § 3420 Claim, the Bankruptcy Court should consider on remand (i) whether Margulies's intent and knowledge establish that Hough's injuries were the sort that would flow "directly and immediately" from

Margulies's actions; and (ii) whether the Incident was accidental, that is, "unusual, unforeseen, or unexpected" from Margulies's perspective.

     The Clerk of Court is directed to mark the case as closed.

     SO ORDERED.

Dated:  September 9, 2014
       New York, New York

                                          KATHERINE POLK FAILLA
                                     United States District Judge